Eastern District of Kentucky
FILED
JUN 29 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-397-GWU

IVA GROSS, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action, pursuant to the provisions of the Social Security Act, to obtain judicial review of an administrative decision of the Department of Health and Human Services; at issue is the denial of her application for Disability Insurance Benefits (DIB), Disabled Widow's Insurance Benefits (WIB) and Supplemental Security Income (SSI). The case is currently before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO WIB CLAIMS

The plaintiff filed three types of benefit claims, as has been noted above. With respect to the plaintiff's widow's insurance benefits, the medical evidence relating to such claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990,

1

Gross

Pub. L. No. 101-508, Section 5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

## LAW APPLICABLE TO DIB AND SSI CLAIMS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of DIB and SSI benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520)c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the

---

[1] Other requirements for Widow's benefits were not at issue in the present case.

2

Gross

    claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work-- i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

3

Gross

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656, (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. If there is objective medical evidence of a medical condition, the court must determine if (1) objective evidence confirms the severity of the alleged pain arising from the condition, or (2) the objectively-established medical condition is of such severity that it can reasonably be expected to produce disabling pain. McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1002 (6th Cir. 1988).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would

4

Gross

have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

In step three, as previously noted, the issue is whether the plaintiff has a "severe impairment." This term is defined by the regulation to mean an impairment which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs" 20 CFR 404.1521. The term is not to be interpreted in an overly restricted manner. Farris v. Secretary, 773 F.2d 85 (6th Cir. 1985). One of the factors which may detract from the decision is when the Secretary automatically determines that a condition is not a severe impairment by virtue of the fact that the claimant was engaged in

some work while suffering from the condition. Mowery v. Secretary, 771 F.2d 966 (6th Cir. 1985). On the other hand, when a plaintiff has suffered from an eye injury since he was a teenager and had a full work history for decades thereafter until he is disabled by another condition, the Secretary might properly determine that the eye injury had little real effect on the disability determination. Auer v. Secretary, 830 F.2d 594 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Gross had chronic obstructive pulmonary disease, hypertension, a history of atrial flutter, musculoskeletal complaints, depression and some presumed deficits in intellectual functioning. (Tr. 26). While Gross was not considered able to perform her past work, she was deemed capable of engaging in significant numbers of light level jobs as identified by a vocational expert (VE). (Tr. 29-31). Thus, benefits were denied. (Tr. 32).

The VE had been asked to assume the following factors were present: (1) a light level exertional ability, (2) an ability to handle simple instructions and tasks in an object-focused environment with no contact with the public and with minimal social interaction with coworkers and supervisors in a job of relatively low stress, (3) a need to avoid concentrated exposure to respiratory irritants such as smoke, dust, gas, fumes and poor air quality, and (4) a need to avoid conditions of high humidity or temperature extremes. (Tr. 239).

6

In making his residual physical functional capacity findings, the ALJ indicated that he relied upon the records of Treating Physician Gregory Sherry and the report of Consultative Examiner Fritzhand. (Tr. 26). He indicated that the less restrictive opinions of Medical Reviewers Hernandez and Rawlings were not relied upon to the extent more than light level work was found acceptable. (Tr. 27). As far as mental restrictions were concerned, Gary Maryman and Medical Reviewer Stodola were relied upon. (Tr. 25). The findings of Dr. John Gatschenberger, who had not been licensed at the time of a consultative examination he conducted, was given credence only to the extent he recorded the plaintiff's history. (Tr. 23).

The physical factors considered were more than adequate.

In June, 2001, shortly after the alleged onset date, Gross was hospitalized with an exacerbation of chronic obstructive lung disease and a simultaneous atrial flutter, which were treated successfully. (Tr. 123). Upon discharge, Treating Physician Sherry told her to "resume light activity as usual." (Tr. 124). At first she felt well afterwards, then developed fatigue. (Tr. 136). The physician felt her fatigue might be related to her moderate obstructive pulmonary disease or her medications; a change in medication ultimately helped her. (Tr. 135). Her physician also noted that she continued to smoke cigarettes and had done so for 30 years. (Tr. 135). In November, Gross was feeling "reasonably well" and her conditions seemed

7

stable, although it was noted that she had gone to see a "disability doctor." (Tr. 134).

Martin Fritzhand conducted a consultative examination in December, 2001. The patient's heart sounds were normal, no funduscopic changes were evident and breath sounds were not abnormal (Tr. 139); hypertension was the only cardiopulmonary diagnosis (Tr. 140). Fritzhand believed that Gross ambulated with a normal gait, was comfortable in both the sitting and supine positions, had a normal range of motion of the extremities, but had decreased tibial pulses and an absent Achilles tendon reflex. (Tr. 139). There was no evidence of muscle weakness or atrophy. (Tr. 140). He did not provide a detailed functional capacity assessment.

At this point, the record was reviewed by Medical Reviewers John Rawlings, who opined that Gross' physical impairments would have no more than a minimal impact on work (Tr. 170), and Diosdado Irlandez, who felt that the plaintiff's impairment(s) would not preclude work-related activities (Tr. 171).

Two other groups of Dr. Sherry's progress notes were introduced into the record as Exhibit 10F and 13F. In February, 2002, the plaintiff reportedly had normal heart sounds, a clear chest and a normal blood pressure; she was described as "overall . . . doing fairly well." (Tr. 177). Between May and October, the rhonchi or decreased breath sounds were detected on a few occasions, but in general her breathing was seen as "okay" with interim concerns of a very different nature (i.e., depression). (Tr. 175-176). In January, 2003 the plaintiff experienced "some

Gross

trouble" when she was out of her inhalers, but Sherry recorded normal heart and chest sounds and again commented that "overall . . . she is really doing fairly well." (Tr. 190). Gross had an exacerbation of her chronic obstructive pulmonary disease when she returned for routine follow-up in April with "a cold"; she was still smoking cigarettes, however. (Tr. 188). When next seen, in July, her breathing was reportedly "okay," chest was clear and her heart sounds normal. (Id.). Her medication was changed, to get her blood pressure under better control. (Id.). Sherry made no functional capacity assessment in the aforesaid two exhibits.

Given this information, the ALJ was generous to the plaintiff in his selection of physical function restrictions. Analysis of the mental factor is then necessary.

Gary Maryman evaluated the plaintiff's mental condition in June, 2003. He stated that he believed the recorded IQ scores in the 60s were an underestimate of Gross' actual mental functioning which was believed to be in the "borderline" range. (Tr. 182). In the text of his report, he commented that Gross would likely be limited to simple, repetitive work involving one or two step instructions with medium to lower stress levels and perhaps no contact with the public (Id.). A GAF of 60,[2] consistent with moderate to almost mild symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV), p. 49, was cited. (Tr.

---

[2] Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning", and those between 61 and 70 are consistent with "some mild symptoms . . . but generally functioning pretty well" as per the DSM-IV.

9

Gross

187).  The examiner concluded by completing an assessment form in which he indicated all skills were at least satisfactory, except for the ability to deal with stress, deal with the public, handle complex instructions or relate predictably in social situations. (Tr. 184-185). The hypothetical factors addressed these restrictions.

The decision will be affirmed.

This the  29  day of June, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

10